FILED - USDC - FLMD - JAX
OCT 9 2026 PM3:25

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**
***(Jacksonville Division)***

Case No.: 3:26-cv-02767-JEP-PDB

LAWRENCE G. ZEKAS and SUSANNA C. ZEKAS,
Plaintiffs,

v.

HAYT, HAYT & LANDAU, P.L.,
JENNIFER CRUZ MESA, ESQ.,
and
KATHERINE MARIE RAMOS, ESQ.,
Defendants.

_______________________________/

## VERIFIED FEDERAL COMPLAINT AND DEMAND FOR JURY TRIAL

## STATEMENT OF FACTS

## I. PARTIES & JURISDICTION

1. Plaintiffs Lawrence G. Zekas[1] and Susanna C. Zekas are husband and wife residing in Jacksonville, Florida **(See Exhibit 9—Copied and Redacted Florida Marriage Certificate)**.

2. Plaintiff Lawrence G. Zekas is the primary head-of-family wage earner for the household. Plaintiff Susanna C. Zekas is a homemaker who manages full-time,

[1] Plaintiff Lawrence G. Zekas notes for the record that while he historically styles his legal name without a suffix, certain legacy bank records and long-standing account registrations dating back prior to the year 2000 append the suffix "Jr." to his name. Plaintiff verifies that he is the exact same individual, head-of-family wage earner, and joint owner of the subject marital accounts referenced throughout this action.

round-the-clock household caregiving and dependent responsibilities within the marital home, and has been unemployed outside the home since 2016.

3. Defendant Hayt, Hayt & Landau, P.L. ("HHL") is a debt collection law firm operating as a "debt collector" under **15 U.S.C. § 1692a(6)**. Defendants Jennifer Cruz Mesa, Esq. ("Mesa"), and Katherine Marie Ramos, Esq. ("Ramos"), are attorneys employed by HHL who personally directed the collection activity alleged herein.

4. Defendants Jennifer Cruz Mesa, Esq., and Katherine Marie Ramos, Esq., are personally liable for the statutory and common law violations alleged herein because they personally signed, directed, executed, and actively prosecuted the unlawful filings, unauthorized extension mechanisms, and predatory state court proceedings with actual knowledge of the assets' exempt status.

5. This Court holds federal-question jurisdiction under **15 U.S.C. § 1692k(d)** and supplemental jurisdiction over related Florida state-law claims under **28 U.S.C. § 1367(a)**. Venue is proper in the Middle District of Florida, Jacksonville Division.

## II. THE UNDERLYING STATE COURT PROCEEDING

6. On February 25th, 2022, a Final Judgment was entered solely against Plaintiff Susanna C. Zekas in the Circuit Court for Duval County, Florida (Case No. 16-2020-CC-009581-XXXX-MA) in the total amount of $13,906.38 **(See Exhibit 1)**.

7. Plaintiff Lawrence G. Zekas was not a party to the underlying contract, was not a judgment debtor, and held no legal obligation regarding the underlying debt.

8. Plaintiffs maintain two long-established joint marital bank accounts—one checking account and one savings account—at Wells Fargo Bank, N.A., which are presumptively protected under Florida law as Tenancy-by-the-Entireties (TBE) property **(See Exhibit 3)**. All core evidentiary documents, banking ledgers, and official state court records supporting these claims are attached hereto and incorporated herein as numerically indexed exhibits (**Exhibit 1** through **Exhibit 22**).

## III. THE WRIT OF GARNISHMENT AND DEBIT ACTIONS

9. On October 17th, 2025, a Writ of Garnishment targeting Susanna C. Zekas was issued at the request of both Defendant HHL and Defendant Mesa, and was subsequently served on Wells Fargo on October 27th, 2025 **(See Exhibit 2)**. As a direct result of the unauthorized and deceptive extension mechanisms subsequently deployed by Defendants, this single execution vehicle was perverted into an ongoing, open-ended trap that continuously monitored and restrained Plaintiffs' banking infrastructure for several months, culminating in the immediate, unlawful seizure of independent online marketplace deposits as late as January 2026 **(See Exhibit 19)**.

10. Between October 27th, 2025, and November 3rd, 2025, Defendants caused Wells Fargo to freeze, seize, and completely drain Plaintiffs' joint marital accounts of the following baseline assets:

- $117.22 (Checking account hold on October 27th) **(See Exhibit 4)**
- $417.68 (Savings account hold on October 27th) **(See Exhibit 4)**
- $1,588.94 (Lawrence Zekas' exempt head-of-family Oct. 30th FedEx Freight direct deposit payroll wages; actual pay was $1,592.74; the lesser $1,588.94 seized was a result of an initial $3.80 negative balance.) **(See Exhibit 4** and **Exhibit 6)**
- $1.00 (Checking transfer debit on October 30th) **(See Exhibit 4)**
- $0.01 (Accrued savings interest debit on November 3rd) **(See Exhibit 4)**

11. Wells Fargo concurrently assessed a $125.00 legal process fee against the account pursuant to Florida Statute § 77.28, which was directly caused by Defendants' execution of the writ **(See Exhibit 4)**. Excluding the process fee, the total amount of exempt funds seized was $2,124.85.

12. All baseline debits featured the tracking label: "LEGAL ORDER DEBIT – CONTACT HAYT HAYT AND LANDAU PL (480) 724-2000 – CASE# 85934225." **(See Exhibit 4)**

## IV. IMMEDIATE NOTICES AND STATED EXEMPTIONS

13. On October 30th, 2025, Plaintiff Lawrence Zekas made two telephone calls to HHL lasting 9 minutes 22 seconds and 27 minutes 43 seconds. The first call was disconnected so Plaintiff Lawrence called back. He explicitly notified the HHL representative that the target bank accounts were protected by TBE, the funds consisted purely of exempt head-of-family wages, and Lawrence Zekas was a non-debtor spouse. The representative confirmed she documented these asset exemptions in HHL's internal system notes, creating a strong inference of corporate knowledge of the exemptions across all Defendants. Subsequent events strongly demonstrate that this oral notice was completely ignored by Defendants, as they actively maintained the freeze and refused to release the marital capital. **(See Exhibit 5)**.

14. On November 4th, 2025, Plaintiffs executed and mailed formal, sworn Claims of Exemption to HHL and Wells Fargo. Plaintiff Lawrence G. Zekas formally claimed head-of-family wage exemptions under Florida Statute § 222.11, and both Plaintiffs asserted a Tenancy-by-the-Entireties (TBE) asset exemption for both the subject checking and saving accounts **(See Exhibit 7)**. Plaintiffs certified the service of these exemption packets to HHL's headquarters on November 4th, 2025, thus establishing formal statutory notice **(See Exhibit 7)**.

15. Plaintiffs filed these identical Claims of Exemption with the Duval County Clerk on November 10th, 2025, which included a formal request to Defendants for

voluntary dissolution of the writ, thus establishing formal notice through the court **(See Exhibit 9)**.

16. On November 13th, 2025, Wells Fargo filed its sworn Answer of Garnishee, stating it was in "good-faith doubt" as to whether it should continue to hold the joint marital funds. By operation of law, the bank's formal invocation of a good-faith doubt explicitly communicated to HHL that the targeted accounts had been flagged as presumptive Tenancy-by-the-Entireties (TBE) property, thereby placing all Defendants on immediate, non-equivocal corporate notice of the assets' protected legal status **(See Exhibit 10)**.

## V. STATUTORY OBJECTION FAILURE AND THE ILLEGAL EXTENSION LOOP

17. Upon Plaintiffs' mailing of their formal Claims of Exemption on November 4th, 2025, Defendants were bound by a strict, non-extendable 14-business-day statutory window under Florida Statute § 77.041 to file a sworn, legally sufficient written objection. Factoring in the November 11th Veterans Day court holiday, this statutory objection window completely expired at midnight on November 25th, 2025. **(See Exhibits 7)**.

18. On November 14th, 2025, Defendant Mesa filed a bare, boilerplate objection that completely failed to provide any legally sufficient challenge or evidentiary basis to dispute Plaintiffs' Tenancy-by-the-Entireties (TBE) exemption. Under Florida's statutory framework, a judgment creditor bears the absolute burden of

proof to challenge a sworn exemption with an evidentiary basis, rather than a generic denial; however, Defendant Mesa's filing completely failed to address or answer the TBE exemption within the required 14-business-day statutory parameter **(See Exhibit 11)**.

19. Under Florida's strict statutory garnishment framework, a judgment creditor is permitted a singular opportunity to contest a consumer's sworn exemptions. Because Defendant Mesa's November 14th, 2025 objection was a bare boilerplate statement directed exclusively at Plaintiff Lawrence G. Zekas' individual head-of-family claim—which itself lacked any supporting evidence—Defendants permanently waived and were legally precluded from filing a second, separate objection or dynamically amending their initial filing to dispute the TBE status either before or after the expiration of the statutory window. While the challenge to the individual wage claim became entirely moot due to the un-objected TBE status, Plaintiff Lawrence G. Zekas maintained an absolute right to intervene as a Non-Party Claimant to protect the household's primary financial infrastructure, as the frozen joint funds in the TBE accounts consisted almost entirely of his exempt payroll wages **(See Exhibit 11)**.

20. Consequently, because no legally sufficient objection contesting the TBE exemption was filed or capable of being filed on or before November 25th, 2025, the underlying Writ of Garnishment automatically dissolved by operation of law at midnight on November 25th, 2025, pursuant to the strict, self-executing mandate

of Florida Statute § 77.041(3). Any continued restraint, administrative block, or maintenance of holds on Plaintiffs' marital banking assets past this absolute statutory threshold completely lacked legal or jurisdictional authority.

21. In what appears to be a deliberate effort to bypass their failure to file a valid objection and circumvent the impending automatic dissolution of the writ, the record seems to indicate that Defendants HHL and Mesa executed a deceptive and structurally unauthorized procedural maneuver. On November 19th, 2025—six days prior to the statutory expiration deadline—Defendants HHL and Mesa e-filed a Notice of Extension pursuant to Florida Statute § 77.07(5) **(See Exhibit 12)**. Defendants utilized this inapplicable statutory subsection as an abusive litigation mechanism to manufacture a false appearance of ongoing validity, successfully misleading the Clerk of Court and Garnishee Wells Fargo into maintaining an illegal, prolonged freeze and de facto "continuing writ of garnishment" on Plaintiffs' exempt assets well into January **(See Exhibit 19)**.

22. On November 30th, 2025, Plaintiffs filed a Combined Motion to Dissolve, serving a second request for voluntary dissolution. The record indicates that Defendants completely disregarded and ignored the motion, failing to submit any response or take corrective action to release the unlawfully restrained capital **(See Exhibit 13)**.

23. On December 9, 2025, Plaintiffs served a formal Civil Theft Safe Harbor Demand letter pursuant to Florida Statute § 772.11, explicitly detailing that

Defendants were operating completely outside of any lawful statutory framework and were predatorily sequestering and tortiously converting a grand total of $2,124.85 in immune marital funds. **(See Exhibit 14)** This statutory notice explicitly warned Defendants that maintaining an open-ended, continuous electronic lock to siphon future household income under a legally dissolved writ constituted an ongoing conversion of personal property. The actionable nature of this conversion is explicitly demonstrated by subsequent docket entries and bank disclosures showing that Defendants left a silent, behind-the-scenes administrative hold active on the account, which instantly intercepted and seized a fresh online marketplace deposit (eBay) on January 8, 2026, before eventually returning the funds without explanation on January 26, 2026—a completed, unauthorized deprivation of capital that was not cured or erased by the subsequent mid-litigation return of the property **(See Exhibit 19)**..

24. Prior to receiving this notice, Defendants failed to maintain an accurate and complete accounting of the total capital seized under their writ, operating blindly off an incomplete data set that under-reported the true volume of Plaintiffs' frozen assets. This blind enforcement is explicitly documented by the stark contradiction between Wells Fargo's initial November 13, 2025 Answer of Garnishee **(See Exhibit 10)** and its subsequent December 24, 2025 Amended Answer of Garnishee **(See Exhibit 16)**, proving that Defendants aggressively maintained a total lockout of Plaintiffs' primary financial infrastructure without tracking the

true volume of capital their execution vehicle was continuously draining from the consumer household.

25. In a manner highly consistent with, and what circumstantially appears to be directly triggered by Plaintiffs' prior December 9, 2025 Civil Theft Safe Harbor Notice, Defendants caused Wells Fargo to file an Amended Answer of Garnishee on December 24, 2025. This filing revised the record to accurately log the higher seized balances of $418.69 and $1,706.16 that had been withheld from the consumers since October 27th and November 3rd, 2025, strongly indicating that Defendants sought to correct their asset tracking records only after being formally placed on notice of impending statutory tort liability **(See Exhibit 16)**.

26. On December 18, 2025, an HHL legal clerk initiated the scheduling of an unauthorized claim-of-exemption hearing (**See Exhibit 15**). Following an active dialogue on the electronic thread, Plaintiffs sent a formal written objection to the Judicial Assistant and HHL at 10:33 AM on December 22, 2025, stating the writ had already dissolved by operation of law on November 25th, 2025, and object to the scheduling of any proceeding (**See Exhibit 15**). In an explicit display of bad-faith litigation behavior, Defendants' clerk completely ignored Plaintiffs' position, replying onto the thread a mere two minutes later to treat the non-party claimant as if he were completely non-existent and his statutory defenses entirely irrelevant (**See Exhibit 15**). In the process of this unilateral dialogue with the state court's Judicial Assistant, HHL's clerk further violated 15 U.S.C. § 1692c(b) and 15 U.S.C.

§ 1692e by publishing private consumer debt details to a judicial employee alongside an explicit, unredacted collection solicitation stating: *"Should you wish to settle, please reach out. This communication is from a debt collector..."* (**See Exhibit 15**).

27. On January 5, 2026, Plaintiffs filed a Notice to the Clerk invoking automatic dissolution under § 77.041(3) **(See Exhibit 17)**. On January 6, 2026, Plaintiffs filed a formal objection to the scheduled hearing **(See Exhibit 18)**. Subsequent actions strongly demonstrate that Defendants completely disregarded and ignored both formal filings on the record, submitting zero response or opposition whatsoever, and choosing instead to march forward with their collection efforts as if Plaintiffs' docketed legal actions and statutory defenses made absolutely no difference to their corporate agenda.

28. On January 8, 2026, an online marketplace deposit (eBay) hit Plaintiffs' joint account and was immediately frozen by Wells Fargo due to the ongoing, unauthorized administrative block sustained by Defendants' undissolved writ. Because a standard bank garnishment under Florida law is restricted to a singular capturing event at the time of service, Defendants' maintenance of an artificial, continuous lock to capture fresh, independent assets months after the initial execution completely exceeded the lawful boundaries of the statutory writ, resulting in an additional unauthorized deprivation of capital until the funds were eventually released on January 26, 2026 **(See Exhibit 19)**.

29. Following the initial October 2025 asset freezes, and continuing through late January 2026, Plaintiffs operated under a state of continuous apprehension and reasonable anxiety regarding the security of their banking infrastructure, directly caused by Defendants' ongoing maintenance of an un-dissolved execution mechanism. To protect the household from further ongoing administrative freezes and secure their foundational income, Plaintiff Lawrence G. Zekas was forced to immediately alter his corporate employment settings to halt direct deposits and request manual physical paper checks from FedEx Freight which continued for several months. It was not until the subsequent return of the administrative eBay holds on January 26, 2026, that Plaintiffs cautiously attempted to re-engage with their primary accounts. Operating defensively, Plaintiffs executed controlled, minimal "test transfers" from the third-party familial account to see if the funds would remain un-seized, only restoring normal household banking activities after confirming that Defendants' administrative lock had finally ceased.

## VI. THE EXEMPTION HEARING AND DISMISSAL

30. Despite having previously failed to establish a lawful statutory basis to dispute the exemptions on the record, and despite receiving multiple written filings, direct email notices, and a Civil Theft Safe Harbor Demand Letter verifying that the underlying writ had already dissolved by operation of law, the record strongly indicates that Defendants consciously chose to disregard and affirmatively ignore every single one of Plaintiffs’ filings, notices, and written communications.

Instead, Defendant Ramos appeared on behalf of HHL and knowingly, willfully, and intentionally forced Plaintiffs' appearance at an unauthorized state court proceeding, actively prosecuting the dissolved writ, improperly shifting the statutory burden of proof onto the consumers, and transforming a summary review that the court no longer had authority to hear into an unauthorized, highly adversarial deposition of Co-Plaintiff Susanna Zekas **(See Exhibit 20)**.

31. On February 9, 2026, the claim-of-exemption hearing formally commenced in Duval County Court, wherein Plaintiffs were sworn in and preserved their formal objection that the writ had dissolved by operation of law on November 25, 2025:

> *"...we appear under objection. We maintain that under Florida Statute, Section 77.041, subpart (3) the writ of garnishment dissolved by operation of law, on November 25th, 2025, due to the plaintiff's failure to file any sworn objection, addressing the tenancy by the entirety exemption, claimed by both the defendant and nonparty claimant. And we do not waive that objection by appearing."* **(See Exhibit 20)**.

During this proceeding, Defendant Ramos used the state court's judicial authority to compel Co-Plaintiff Susanna Zekas to answer a series of invasive questions under oath, forcing her to divulge private household financial information that the debt collector had zero legal authority to extract or pursue under an automatically dissolved execution mechanism. Under this judicial compulsion, Co-Plaintiff Susanna Zekas was forced to testify regarding the source of their marital capital, stating on the record:

> *"The funds are ours together in the accounts that are both tenancy by the entirety; however, the funds that are placed in there are his paychecks. That is how the accounts are funded."* **(See Exhibit 20).**

The record strongly indicates that this entire line of questioning was an entirely redundant, bad-faith fishing expedition, as every single fact Defendant Ramos sought to extract had already been explicitly detailed and answered in Plaintiffs' public state court filings, direct emails, and mailed statutory exemption forms. This cross-examination demonstrates an apparent pattern where Defendants either completely refused to read or consciously chose to disregard Plaintiffs' docketed defenses, choosing instead to utilize judicial process as a tool of raw harassment.

32. Upon executing this unauthorized fishing expedition, Defendant Ramos openly admitted on the record that the targeted accounts met the criteria for Tenancy-by-the-Entireties, explicitly stating:

> *"I mean, that would be a tenant by the entirety, I think. There's like several different like unities, I think, Your Honor, but — but I think she's correct."* **(See Exhibit 20)**

Defendant Ramos then flatly conceded to the presiding judge:

> *"So if she's correct and if you agree, Your Honor, then she would be entitled to the Claim of Exemption."* **(See Exhibit 20)**

33. Despite this explicit corporate confession under oath that the funds were insulated from collection, Defendant Ramos aggressively moved to suppress the record regarding HHL's procedural failures and block Plaintiff Lawrence G. Zekas

from speaking. When Plaintiff Lawrence G. Zekas finally attempted to explain the self-executing statutory mechanics of automatic dissolution under Florida Statute § 77.041(3) to the court, he testified:

> *"The writ of garnishment was against my bank account, joint marital bank accounts, and so I do have a say in this. And so they were required, by the statute, to file an objection within 14 days of the mailing, and they did not do that... And so therefore the writ of garnishment dissolved by what's known as 'operation of law' on November 25th. So there's nothing to adjudicate here. There is no live controversy."* **(See Exhibit 20)**

34. Immediately upon Plaintiff Lawrence G. Zekas bringing the cold letter of the law onto the record, Defendant Ramos cut off the witness and moved to completely silence and purge his testimony from the court ledger, declaring:

> *"I have to object to all of this and ask for all of it to be stricken, Your Honor. It's all irrelevant. You've asked him to stop speaking. He's not a party to the claim."* **(See Exhibit 20)**

35. The state court judge—explicitly noting on the record that she had completely failed to review, read, or research the active statutory filings on her own docket—stated:

> *"I need to research this. I haven't had time to yet."* **(See Exhibit 20)**

The judge subsequently granted Defendant Ramos's strategic motion, declaring:

> *"I grant the motion. Strike the testimony from the proceedings, at this point, as irrelevant,"* thereby completely purging the non-party claimant's statutory defenses from the oral record **(See Exhibit 20)**.

36. Following the hearing, on February 17, 2026, realizing they possessed zero legal or factual defense to the impending liability of an un-objected TBE account record, Defendants e-filed a Voluntary Dismissal of Garnishment Without Prejudice. Defendant Ramos signed the Dismissal explicitly directing the bank to release all held funds back to the consumers *"without further order from the court"* **(See Exhibit 21)**.

37. On March 4, 2026, as documented by Plaintiffs' official March bank disclosures, Garnishee Wells Fargo executed formal Legal Order Reversals, restoring $1,706.16 to checking line 8320 and $418.69 to savings line 8726 **(See Exhibit 22)**.

38. As a direct and proximate result of Defendants' collection actions, the record indicates that Defendants' extension maneuvers and prolonged asset restraint appear to have engineered an unmitigated estimated 113-day window of continuous economic deprivation, unlawfully holding protected head-of-family wages and marital capital hostage in direct violation of federal and state consumer protection statutes. Consequently, Plaintiffs suffered severe, documented, and distinct concrete injuries, including, but not limited to:

> **a.** The permanent exhaustion and forfeiture of a non-renewable corporate vacation day by Plaintiff Lawrence G. Zekas to attend an unauthorized state-court proceeding, resulting in a direct loss of earned employment compensation and benefits **(See Exhibit 20)**;

**b.** Quantifiable out-of-pocket financial losses incurred to hire and secure a private court reporter to preserve the official oral record of the state-court hearing **(See Exhibit 20)**;

**c.** Direct out-of-pocket financial loss in the amount of **$125.00** forced upon Plaintiffs by Co-Garnishee Wells Fargo as a structural legal processing fee pursuant to Florida Statute § 77.28, which was proximately and exclusively caused by Defendants' unlawful execution and maintenance of the writ;

**d.** Severe fiduciary distress and physical safety risks forced upon Plaintiff Lawrence G. Zekas, who was required to alter his long-standing employment payroll methods, request manual corporate checks, and transport and carry large volumes of physical currency on his person after being forced to manually cash his Bank of America payroll checks for several months at independent Bank of America branches due to the fear-induced lockout of Plaintiffs' primary banking infrastructure;

**e.** Severe disruption to the household's online bill-paying infrastructure, which forced Plaintiffs to navigate complex banking barriers and engage in the highly inconvenient, defensive practice of manually transporting cash to deposit into a separate, third-party familial account in order to maintain vital utility and household survival payments, resulting in distinct administrative and logistical hardship solely to Plaintiffs Lawrence G. and Susanna C. Zekas; and

**f.** Prolonged and severe emotional distress, anxiety, and deep frustration inflicted upon the family. Because Plaintiffs maintain round-the-clock, intensive full-time caregiving and dependent responsibilities within their household, the total lockout of their primary financial infrastructure completely disrupted their stabilizing family routine, causing severely compounded emotional distress, exhaustion, and mental anguish unique to their caretaking obligations over an estimated 128-day deprivation window.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

**(15 U.S.C. § 1692 et seq.)**

39. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 38 as though fully set forth herein.

40. Defendants are "debt collectors" as defined by **15 U.S.C. § 1692a(6)**, and the underlying financial obligation constitutes a "debt" under **15 U.S.C. § 1692a(5)**.

41. Defendants violated **15 U.S.C. § 1692e**, **§ 1692e(2)(A)**, **§ 1692e(5)**, and **§ 1692e(10)** by utilizing false, deceptive, and misleading representations and mechanisms in connection with the collection of a consumer debt. Specifically, the sequence of filings shows that Defendants executed a deceptive and structurally unauthorized procedural maneuver by e-filing a Notice of Extension under an inapplicable statutory subsection (Fla. Stat. § 77.07(5)) to manufacture a false appearance of ongoing case validity and indefinitely sustain an asset freeze over known exempt assets **(See Exhibit 12)**.

42. Defendants further violated **15 U.S.C. § 1692e** and **§ 1692c(b)** through their legal clerk on December 22, 2025, by publishing private, unredacted consumer debt details directly onto an electronic communication thread with a state court Judicial Assistant while simultaneously initiating an unauthorized settlement collection solicitation **(See Exhibit 15)**.

43. Defendants violated **15 U.S.C. § 1692f** and **§ 1692f(1)** by using unfair and unconscionable means to collect a debt. Specifically, Defendants knowingly, willfully, and intentionally forced Plaintiffs' appearance at an unauthorized state court proceeding on February 9, 2026, actively prosecuting a writ of garnishment that had already dissolved by operation of law on November 25, 2025, pursuant to the self-executing mandate of Florida Statute § 77.041(3) **(See Exhibit 11** and **Exhibit 20)**.

44. Defendants further violated 15 U.S.C. § 1692f(1) by maintaining an ongoing administrative freeze over the exempt head-of-family wages of Plaintiff Lawrence G. Zekas (earned through his employment at FedEx Freight) after receiving actual telephonic notice on October 30, 2025, and formal written notice on November 6, 2025, thereby using unfair and unconscionable means to collect an amount not permitted by law under the absolute statutory immunity of Florida Statute § 222.11.

**COUNT II: VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA)**

**(Florida Statutes § 559.72 et seq.)**

45. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiffs are "consumers" and the underlying obligation is a "consumer debt" as defined by Florida Statute § 559.55.

47. Defendants violated Florida Statute § 559.72(9) by asserting, threatening to assert, and attempting to enforce a legal right in state court that they knew did not exist.

48. The record shows that Defendants possessed actual, corporate knowledge as of October 30, 2025, and formal written notice as of November 6, 2025, that Plaintiffs' assets were insulated under Tenancy-by-the-Entireties and head-of-family frameworks **(See Exhibit 5, Exhibit 7)**. By choosing to let the 14-business-day objection window expire without filing a TBE challenge, and subsequently deploying a deceptive, unauthorized Notice of Extension to continue restraining the marital assets for an estimated 76-day additional period past statutory dissolution leading up to the unauthorized hearing, Defendants knowingly, willfully, and intentionally engaged in prohibited collection practices **(See Exhibit 11, Exhibit 12,** and **Exhibit 20)**.

**COUNT III: CIVIL THEFT / CONVERSION**
**(Florida Statutes § 772.11 and § 812.014)**

49. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 48 as though fully set forth herein.

50. On December 9, 2025, Plaintiffs served Defendants with a formal, written Civil Theft Safe Harbor Demand Letter pursuant to Florida Statute § 772.11, explicitly detailing that Defendants were operating without legal authority and withholding a grand total of $2,124.85 in exempt marital funds **(See Exhibit 14)**.

51. The sequence of filings indicates that despite receiving this formal statutory warning, and despite realizing their internal asset ledgers were flawed—evidenced by their scrambling to cause Wells Fargo to file a corrected Amended Answer on December 24, 2025—Defendants refused to dissolve the restriction or release the funds, maintaining their prolonged restraint on Plaintiffs' property for an additional 55 days **(See Exhibit 16** and **Exhibit 21)**.

52. Rather than utilizing the 30-day statutory Safe Harbor window to cure their prior conversion and restore Plaintiffs' infrastructure, Defendants completely ignored Plaintiffs' December 9, 2025 demand. Instead, to add insult to injury, right at the tail end of the statutory Safe Harbor period on January 8, 2026, Defendants boldly and unlawfully helped themselves to Plaintiffs' property by allowing their unauthorized administrative lock to break into Plaintiffs' account and convert a fresh, independent online marketplace (eBay) transaction (**See Exhibit 19**). Defendants then aggressively maintained total dominion over this stolen capital for 18 distinct days, completely depriving Plaintiffs of access to their own property under a dead execution vehicle that had already dissolved by operation of law (**See Exhibit 11 and Exhibit 12**).

53. The timeline of events and the unauthorized deployment of the November 19, 2025 Notice of Extension create a strong inference that Defendants acted with a felonious state of mind, knowingly utilizing an inapplicable statutory vehicle to temporarily deprive Plaintiffs of the use and benefit of their personal property and

appropriate the control of said funds for an unauthorized period under Florida Statute § 812.014 **(See Exhibit 12)**.

**COUNT IV: ABUSE OF PROCESS**
**(Florida Common Law)**

54. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 53 as though fully set forth herein.

55. Defendants made an improper, willful, and unauthorized use of state court process. While a post-judgment writ of garnishment is a recognized legal mechanism, Defendants perverted the process by converting a dead, automatically dissolved execution vehicle into an active tool of economic coercion.

56. The record indicates that Defendant attorney Katherine Marie Ramos utilized the state court's scheduling authority on February 9, 2026, not to litigate a timely, legally sufficient statutory objection, but to execute an unauthorized fishing expedition and an improper deposition under judicial compulsion against a non-debtor spouse and a protected consumer account **(See Exhibit 20)**.

57. Defendants engaged in these collateral, perverted maneuvers with an ulterior motive to force an unaligned debt settlement out of a vulnerable consumer household, resulting in an unmitigated 116-day window of continuous economic deprivation and out-of-pocket financial harm to the Plaintiffs.

**COUNT V: DECLARATORY JUDGMENT (MARITAL STATUS OF ASSETS)**

**(28 U.S.C. § 2201 and Florida Statutes § 86.011)**

58. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 57 as though fully set forth herein.

59. An active, bona fide, and practical dispute exists between Plaintiffs and Defendants regarding the permanent legal status and accessibility of the household banking infrastructure maintained at Wells Fargo Bank, N.A. **(See Exhibit 3)**.

60. Because Defendant HHL continues to hold an active, unsatisfied 2022 state money judgment solely against Co-Plaintiff Susanna C. Zekas, and because Defendants have demonstrated a corporate propensity to repeatedly launch aggressive enforcement mechanisms against the household's primary financial infrastructure despite actual knowledge of exemptions, Plaintiffs sit in a position of continuous, imminent jeopardy of future unlawful asset freezes and account lockdowns **(See Exhibit 1** and **Exhibit 4)**.

61. Plaintiffs are judicially entitled to a definitive declaration of rights to secure industrial peace and shield their household infrastructure from ongoing collector overreach.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs Lawrence G. Zekas and Susanna C. Zekas respectfully request that this Court enter judgment in their favor and against Defendants Hayt,

Hayt & Landau, P.L., Jennifer Cruz Mesa, Esq., and Katherine Marie Ramos, Esq., jointly and severally, for the following relief:

**A.** An award of actual compensatory damages pursuant to **15 U.S.C. § 1692k(a)(1)** and **Florida Statute § 559.77(2)** to remedy the severe emotional distress, documented out-of-pocket financial loss, court reporter expenses, and localized economic deprivation caused by Defendants' actions;

**B.** An award of statutory damages in the maximum amount of $1,000.00 pursuant to **15 U.S.C. § 1692k(a)(2)(A)**;

**C.** An award of statutory punitive damages in the maximum amount of $1,000.00 per Plaintiff, against each Defendant individually, pursuant to **Florida Statute § 559.77(2)**;

**D.** An award of treble (triple) damages based on the total volume of funds withheld following the safe harbor threshold pursuant to the Civil Theft mandate of **Florida Statute § 772.11**;

**E.** An award of reasonable attorney's fees, expert witness costs, and all taxable litigation costs incurred throughout the prosecution of this action pursuant to **15 U.S.C. § 1692k(a)(3)**, **Fla. Stat. § 559.77(2)**, and **Fla. Stat. § 772.11**;

**F.** A formal Declaratory Decree pursuant to **28 U.S.C. § 2201** declaring that the joint checking and savings accounts maintained by Plaintiffs at Wells Fargo Bank, N.A., constitute legal Tenancy-by-the-Entireties (TBE) property under Florida law, thereby legally insulating said assets from any unilateral enforcement or execution mechanisms arising from debts or judgments corporate-owned solely by Co-Plaintiff Susanna C. Zekas; and

**G.** Any such further, alternative, or generalized equitable relief that this Court deems just, proper, and necessary to protect the consumers.

**PLAINTIFFS' DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Article III of the Constitution of the United States, Plaintiffs Lawrence G. Zekas and Susanna C.

Zekas hereby demand a trial by jury on all counts, claims, and issues in the above-styled action so triable as a matter of right.

**PLAINTIFFS' VERIFICATION & SIGNATURE**

***(Pursuant to 28 U.S.C. § 1746)***

We, Lawrence G. Zekas and Susanna C. Zekas, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that we are the Plaintiffs in the above-styled action, that we have read the foregoing Federal Complaint, and that the factual allegations contained therein are true and correct to the best of our knowledge, information, and belief.

Executed on this 9th day of October, 2026.

L. Zekas

Lawrence G. Zekas, *Plaintiff pro se*
9736 Peabody Dr. N
Jacksonville, Florida 32221
904-891-7169
LZekas01@gmail.com

Susanna C Zekas

Susanna C. Zekas, *Plaintiff pro se*
9736 Peabody Dr. N
Jacksonville, Florida 32221
904-891-7169
LZekas01@gmail.com