**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Case No. 3:26-cv-02767-JEP-PDB

LAWRENCE G. ZEKAS and
SUSANNA C. ZEKAS,

Plaintiffs,

v.

HAYT, HAYT & LANDAU, P.L.,
JENNIFER CRUZ MESA, ESQ., and
KATHERINE MARIE RAMOS, ESQ.,

Defendants.

_________________________________________ /

# PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS VERIFIED COMPLAINT

Plaintiffs Lawrence G. Zekas ("Mr. Zekas") and Susanna C. Zekas ("Mrs. Zekas"), proceeding pro se, respectfully submit this Amended Opposition to the Motion to Dismiss (Doc. 7) filed by Defendants Hayt, Hayt & Landau, P.L. ("HHL"), Jennifer Cruz Mesa, Esq. ("Mesa"), and Katherine Marie Ramos, Esq. ("Ramos"). Defendants' Motion attempts to distort the factual record, exploit bad-faith omissions, and misapply established federal law. The Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Despite defense counsel's voluminous text and shifting procedural arguments, the underlying controversy remains exceptionally simple. It turns on the self-executing

mandates of the second and third sentences of Florida Statute § 77.041(3)—not the first sentence, which Defendants isolate to obscure their unlawful conduct.

In the underlying state action, Plaintiffs timely served notarized Claims of Exemption protecting their joint Wells Fargo bank accounts as immune Tenancy-by-the-Entireties ("TBE") assets (Doc. 1, Ex. 7). Under § 77.041(3), judgment-creditor Defendants had a strict, non-extendable 14-business-day window to file a sworn statement answering and contesting that marital exemption. Defendants defaulted, failing to file a single word of evidence disputing the accounts' TBE status (Doc. 1, Ex. 11).

Consequently, at midnight on November 25, 2025, "no hearing [was] required" and the Writ of Garnishment dissolved automatically by operation of law. Every subsequent notice, hold, and courtroom maneuver was unlawful and lacked jurisdiction. For nearly four months, Defendants—whose name "Hayt Hayt and Landau Pl" appears directly on the certified bank ledgers—deprived Plaintiffs of their marital property and Mr. Zekas's exempt head-of-family wages, even intercepting a fresh eBay marketplace deposit on January 8, 2026 (Doc. 1, Ex. 4, 6; see Section VI(B), infra).

A central, defining theme of Plaintiffs' Verified Complaint is Defendants' systemic pattern of willful blindness—specifically, their deceptive practice of completely ignoring Plaintiffs' statutory defenses and formal notices to advance a corporate collection agenda. Remarkably, Defendants' newly retained counsel, Ernest H. Kohlmyer, III, has chosen to adopt this exact same operational model before this Court.

In moving to dismiss, defense counsel relies on Eleventh Circuit precedent holding that where an exhibit contradicts a party's characterization of it, the exhibit

controls (citing *Griffin Indus.*, 496 F.3d at 1206). Yet counsel stunningly failed to read the very exhibits he claims control this case. Counsel repeatedly fabricates a narrative out of whole cloth, asserting on page 3, and under Sections II(C) and IV(C) of the Motion that Plaintiffs "checked the box stating: 'I request a hearing....'" As proven by the record, no such checkboxes exist on the form (Doc. 1, Ex. 7; see Section II, infra).

Moreover, Exhibit 15 conclusively establishes that Plaintiffs explicitly objected to any hearing on the record and Exhibit 18 ¶ 14 shows that Plaintiffs explicitly docketed a written statement on the public record clarifying: "*For the record, Defendant and Non-Party Claimant did not request a hearing on their claim-of-exemption forms.*"

By bringing a Motion to Dismiss built upon a fabricated narrative refuted by the record, defense counsel has trapped himself under the weight of his own legal standard. Because the exhibits control, they conclusively brand Defendants' unsworn motion as a material misrepresentation of the record. The Motion must be denied.

## LAW AND ARGUMENT

### I. REBUTTAL TO DEFENDANTS' INTRODUCTORY ASSERTIONS (Pgs. 1–2)

Defendants assert in their Introduction that this lawsuit improperly converts a routine post-judgment garnishment into statutory liability, arguing that returning the principal funds erases their FDCPA and FCCPA exposure (Doc. 7, pp. 1–2). This unsworn narrative ignores established law. A garnishment ceases to be "routine" or "court-supervised" the moment a debt collector defaults on a consumer's TBE marital exemption under Fla. Stat. § 77.041(3). Defendants cannot maintain an illegal freeze for 113 days, hijack judicial scheduling over consumer objections, and escape liability

through a tactical dismissal once exposed (Doc. 1, Ex. 12, 15, 21).

Returning the principal balances did not retroactively erase four months of financial distress, the lockout of Plaintiffs' banking infrastructure, or the forced forfeiture of Mr. Zekas's wages. Worse, Exhibit 4 proves that the initial October 27, 2025 freeze drained a mandatory $125 bank legal fee under Fla. Stat. § 77.28 from immune marital funds—an injury that remained uncured when the state case closed (see Section VII, infra). Furthermore, Defendants executed a mid-litigation conversion of a fresh eBay marketplace deposit on January 8, 2026—Day 24 of the 30-day Civil Theft Safe Harbor window triggered by Plaintiffs' December 15, 2025 demand letter (Doc. 1, Ex. 14, 19). Under Florida law, returning converted property only mitigates damages; it never erases a completed tort. The Motion must be denied.

## II. REBUTTAL TO DEFENDANTS' BACKGROUND FACTS (PAGES 3–5)

Defendants' Background section flattens the chronological record, portraying statutory defaults and defensive reactions as routine coincidences (Doc. 7, pp. 3–5). The physical exhibits refute counsel's unsworn narrative across each subsection:

**The judgment and the writ** (Doc. 7, p. 3). While Defendants admit the accounts were jointly titled in the names of both Mr. and Mrs. Zekas (Doc. 1, Ex. 10), they omit that under Florida law, joint marital accounts carry presumptive Tenancy-by-the-Entireties ("TBE") immunity from inception (see Section VI(A), infra), making it unlawful to drain a $125.00 statutory fee from non-liable third party Mr. Zekas (Doc. 1, Ex. 3, 4; *see* Section VII, *infra*).

**The claims of exemption and HHL's sworn objection** (Doc. 7, pp. 3–4). Ex-

hibit 7 proves there is no checkbox on the uniform form to request a hearing. Plaintiffs used Line 12 to assert their joint TBE exemption and left the hearing request lines below Line 12 completely blank; counsel's claim that Plaintiffs "checked the box" is refuted by the exhibit he claims controls. Also, the *unredacted* text of Exhibit 11 reveals that Mesa executed a sworn affidavit containing absolute fabrications, swearing: "2. Defendant has filed an affidavit for exemption pursuant to Florida Statute Section 222.11. [and] 3. Plaintiff denies the Defendant's Claim of Exemption." Co-Plaintiff Mrs. Zekas—the sole judgment debtor—has been a full-time homemaker since 2016 and never filed a wage claim. Non-Party Claimant Mr. Zekas filed the wage exemption to protect his FedEx Freight payroll (Doc. 1, Ex. 6). Mesa falsely branded Mr. Zekas a "Defendant" while failing to contest the TBE exemption, causing the writ to dissolve automatically at midnight on November 25, 2025 (*see* Section IV(C), *infra*).

**Scheduling the hearing** (Doc. 7, p. 4). Defendants portray their clerk's emails to the Judicial Assistant ("JA") and Wells Fargo's amended answer as routine events (*see* Section IV(B), *infra*). In truth, HHL's clerk embedded a debt collection solicitation in emails to a judicial employee to schedule an unauthorized hearing on a dead writ, and Mr. Zekas joined the thread solely to object (Doc. 1, Ex. 15). Worse, counsel *casually* deploys the word "*meanwhile*" to depict Wells Fargo's amended answer as an isolated coincidence, when it was actually a panic-driven reaction to Plaintiffs' December 15, 2025 statutory demand letter—not because bank attorneys suddenly began thinking about the Zekases on Christmas Eve (Doc. 1, Ex. 14, 16; *see* Section VI(B), *infra*).

**The hearing** (Doc. 7, pp. 4–5). Defendants rely on context-stripped transcript

excerpts to claim the court properly directed questioning to Mrs. Zekas and struck Mr. Zekas's statements as a "non-party." Exhibit 20 refutes this narrative. At the February 9, 2026 hearing, Ramos openly confessed she failed to read the caption, header, or signature blocks of the pleadings she was prosecuting, admitting she "misread the top" (Doc. 1, Ex. 20 at Tr. 4:4–14). Moreover, under Fla. Stat. § 77.16, a third-party claimant whose joint TBE property and wages were seized has a right to be heard; Defendants cannot brand Mr. Zekas a "Defendant" in a sworn objection (Doc. 1, Ex. 11) and then silence him as a "non-party" to evade automatic dissolution (Doc. 1, Ex. 20 at Tr. 15:24–16:5; *see* Section V, *infra*). Forcing unrepresented litigants into court on a dissolved writ while admitting she misread their pleadings represents the height of reckless debt collection harassment, foreclosing any good-faith defense under § 559.72(9).

**Dismissal and return of funds; This lawsuit** (Doc. 7, p. 5). HHL's February 17, 2026 voluntary dismissal—"before the court ruled"—is a calculated legal fiction and tactical retreat after compromising their position at the unauthorized hearing (Doc. 1, Ex. 20, 21), leaving Plaintiffs' $125.00 pocketbook injury uncured (Doc. 1, Ex. 4, 22; *see* Sections IV(C), VII, *infra*). Because the record refutes defense counsel's unsworn assertions, Defendants' Background narrative must be rejected.

## III. THE COMPLAINT IS NOT AN IMPERMISSIBLE SHOTGUN PLEADING

Defendants argue under Section I of their Motion that the Verified Complaint is a "shotgun pleading" because it incorporates preceding paragraphs and fails to separate individual actions (Doc. 7, p. 6). The hallmark of a shotgun pleading is failing to give defendants "adequate notice of the claims against them." *Weiland v. Palm Beach Cnty.*

*Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Plaintiffs' Complaint provides precise notice, detailing which Defendant committed each unlawful act. HHL is a corporate debt collection law firm, acting through its direct agents, Mesa and Ramos. When Mesa e-filed an inapplicable Notice of Extension on November 19, 2025, and when Ramos conducted an abusive examination on a dissolved writ on February 9, 2026, each acted as an agent of HHL (Doc. 1, Ex. 12, 20). Pleading counts against individual tortfeasors and their corporate employer is standard vicarious liability.

Furthermore, realleging chronological background paragraphs is proper where claims arise from a single, continuous 113-day transaction of overlapping enforcement. Pro se pleadings must be held to "less stringent standards" and construed liberally to resolve disputes on the merits. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under *Erickson*, the shotgun pleading label is inapplicable.

## IV. COUNT I FULLY STATES AN ACTIONABLE FDCPA VIOLATION PAST THE SELF-EXECUTING DISSOLUTION OF THE WRIT

Defendants assert under Section II of their Motion that the FDCPA does not transform litigation conduct into a statutory violation, relying on *Miljkovic* to claim immunity (Doc. 7, p. 7). The record and Chapter 77 refute this argument.

### A. The Inapplicable Notice of Extension Was a Deceptive Device Specifically Context-Stripped to Evade Exemption Deadlines

Defendants argue in Section II(A) that the November 19, 2025 Notice of Extension could not mislead the least sophisticated consumer because it merely "cited the statute" (Doc. 7, p. 8). Under Fla. Stat. § 77.041(3), Defendants had a non-extendable 14-business-day window to file a sworn statement contesting Plaintiffs' TBE marital

immunity, or "no hearing is required [and] the clerk must automatically dissolve the writ". Lacking any basis to dispute TBE status, Mesa e-filed an Extension invoking Fla. Stat. § 77.07(5) five days before the objection window expired (Doc. 1, Ex. 12).

Section 77.07(5) is merely an administrative clock that dissolves a writ if a plaintiff takes no action within six months; it does not override a consumer's active Claim of Exemption clock under § 77.041(3). By stripping subsection (5) of its context, Defendants misled the least sophisticated consumer, Wells Fargo, and the Clerk into believing HHL could unilaterally perpetuate a freeze past automatic dissolution (Doc. 1, Ex. 19), violating 15 U.S.C. § 1692e(2)(A) and § 1692e(10).

**B. Communicating Debt Collection Solicitations to a Court Judicial Assistant Violates the Strict Mandates of Section 1692c(b)**

Defendants argue under Section II(B), their clerk's emails to the judge's Judicial Assistant ("JA") did not violate 15 U.S.C. § 1692c(b) because they were "reasonably necessary to effectuate a postjudgment judicial remedy" (Doc. 7, pp. 8–9). When HHL's clerk emailed the JA on December 18 and 22, 2025, the Writ had already dissolved by operation of law on November 25, 2025 (Doc. 1, Ex. 11). Because the state court's remaining duties were strictly ministerial, scheduling a hearing on a dead writ was not "reasonably necessary" neither were Plaintiffs seeking one, but were attempting to have the Clerk enter a dissolution order (Doc. 1, Ex. 17). Mr. Zekas intervened on the email thread solely to object to the statutorily barred hearing (Doc. 1, Ex. 15).

Moreover, defense counsel *crops* the clerk's electronic signature block, which broadcasted a collection notice directly to a judicial employee: "Should you wish to

settle, please reach out. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." (Doc. 1, Ex. 15). Embedding an unredacted collection solicitation in an email to a third-party JA violates 15 U.S.C. § 1692c(b). Dismissal must be denied.

### C. The Mandatory Hearing Theory is Flatly Refuted by the Grammatical Structure and Self-Executing Mandates of Fla. Stat. § 77.041(3)

Defendants assert under Section II(C) that their courtroom scheduling was *"the antithesis of an 'unfair means'"* under 15 U.S.C. § 1692f because the hearing was "statutorily mandated" by § 77.041(3), requested by Plaintiffs, and directed by the judge (Doc. 7, pp. 9–10). Defendants isolate the first sentence of § 77.041(3) while ignoring the second sentence's conditional "If" clause: "If the plaintiff or the plaintiff's attorney does not file a sworn written statement that answers the defendant's claim of exemption within... 14 business days if the claim and request were served by mail, no hearing is required." Because HHL failed to answer the TBE claim within 14 business days, no hearing was required (Doc. 1, Ex. 11), and under the third sentence's mandatory command, the Clerk "must automatically dissolve the writ" after November 25, 2025.

Plaintiffs submitted a proposed dissolution order on November 30, 2025 (See state docket and Doc. 1, Ex. 13), before Defendants ambushed them with a hearing request. Counsel's claim that Plaintiffs checked "I request a hearing" on Exhibit 7 is refuted by the blank form. See Section II, supra. Likewise, Mesa's *unredacted* boilerplate objection under Exhibit 11 targeted only a non-existent § 222.11 wage claim and could not preserve the writ against a conceded and "unanswered" TBE exemption.

Finally, Defendants' claim that their courtroom conduct was the "antithesis of an unfair means" because the judge directed the swearing of oaths does not sanitize an illegal proceeding; the transcript proves the judge was misdirected by Defendants' deceptive scheduling practices, later admitting: *"I need to research this. I haven't had time to yet."* (Doc. 1, Ex. 20). Plaintiffs were forced into that courtroom. Immediately upon both Co-Plaintiffs being placed under oath, Co-Plaintiff Mrs. Zekas explicitly stated their formal objection on the record (Doc. 1, Ex. 20 at Tr. 4:23-25 & 5:1-6).

Furthermore, Defendants' *unsworn narrative* advanced inside counsel's Motion attempts to execute a final sanitization of this timeline by asserting that: "On February 17, 2026, before the court ruled, HHL voluntarily dismissed the garnishment..." (Doc. 7, p. 5). This phrase—"before the court ruled"—is a calculated legal fiction. Because the Writ had already automatically dissolved at midnight on November 25, 2025, from that calendar date forward, the state court completely lost jurisdictional authority over the immune assets. Defendants' February 17, 2026 voluntary dismissal (Doc. 1, Ex. 21) does not cure four months of unlawful deprivation. A post-dismissal return of capital does not erase or cure a four-month continuous economic deprivation or the intentional abuse of process used to sustain it. The Motion must be denied.

**D. Shifting Liability to the Bank Fails to Absolve Garnishor Attorneys**

Under Section II(D) of their Motion, Defendants' attempt to blame Wells Fargo for maintaining an ongoing freeze while an exemption claim is actively litigated is an exercise in bad faith that fails to absolve them under 15 U.S.C. § 1692f(1), alongside counsel's false assertion that Mr. Zekas's wages "were not garnished" because the

writ targeted a bank account (Doc. 7, pp. 10–11). This argument represents a distortion of federal and state consumer law and stands refuted by the bank disclosures.

First, under Florida law, a bank garnishment captures only a one-time static snapshot of funds present at service—not an open-ended net for future deposits. By filing a legally inapplicable Extension under § 77.07(5), Defendants perverted this framework and misled Wells Fargo (and the Clerk) into maintaining a 76-day freeze past automatic dissolution (Doc. 1, Ex. 12). The bank ledgers identify "Hayt Hayt and Landau Pl" permanently stamped on every hold and debit (Doc. 1, Ex. 4).

Second, it is a well-settled principle of consumer protection law that exempt capital—including head-of-family wages protected under Florida Statute § 222.11—do not lose immunity when direct-deposited into a joint marital account. Exhibit 6 proves Mr. Zekas's FedEx Freight wages were deposited on October 30, 2025, and instantly captured and debited (Doc. 1, Ex. 4, 6). Despite immediate phone notice and formal Claims of Exemption (Doc. 1, Ex. 5, 7), Defendants remained silent and refused to release the wages and the immune marital capital. Thereafter, in January 2026, Defendants' unlawful execution vehicle boldly intercepted a fresh eBay sale deposit. Siphoning future household income, intercepting fresh online marketplace deposits, and cutting off the household's primary financial infrastructure for nearly four months under a dead execution vehicle—all while willfully refusing to engage with the consumer or acknowledge public record defaults—constitutes an attempt to collect amounts not permitted by law in flagrant violation of 15 U.S.C. § 1692f(1).

## V. FLORIDA'S LITIGATION PRIVILEGE DOES NOT BAR COUNTS II, III,

**OR IV**

Under Section III of their Motion, Defendants argue that Florida's litigation privilege immunizes them from state-law liability because their acts occurred during a judicial proceeding (Doc. 7, pp. 11–15). First, under the Supremacy Clause of the U.S. Constitution, a state-law privilege cannot bar federal FDCPA liability under Count I, nor does it bar Counts II, III, or IV under binding Florida Supreme Court precedent.

Responding to Subparts III(A) and III(B) (Doc. 7, pp. 11–13), Defendants cite *Levin*, 639 So. 2d at 608, and *Echevarria*, 950 So. 2d at 384, to claim absolute immunity for their six bulleted acts—from filing the writ, false objection, and inapplicable extension, to emailing the JA, objecting to Mr. Zekas at the February 9 hearing, and maintaining the writ to hold the January 2026 eBay deposit before dismissing it (Doc. 1, Ex. 2, 11-12, 15, 19–21). Yet the Florida Supreme Court expressly limited *Levin* and *Echevarria* in *Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017), holding that the privilege does *not* bar torts premised upon wrongful continuation of legal process. Once the writ dissolved on November 25, 2025 under § 77.041(3), *no lawful proceeding remained.* Every subsequent bulleted act—scheduling an unauthorized hearing, silencing a statutory claimant under Fla. Stat. § 77.16 (Section II, *supra*), and converting fresh eBay funds on Day 24 of a Civil Theft Safe Harbor window (Doc. 1, Ex. 14, 19)— constitutes unauthorized conversion and abuse of dissolved process, not protected advocacy.

Responding to Subpart III(C) (Doc. 7, pp. 13–14), Defendants claim that *Echevarria* bars Count II (FCCPA) and assert Plaintiffs had an adequate state remedy. Under *Debrincat*, statutory claims challenging the unlawful continuation of dissolved pro-

cess are not shielded by immunity, and Plaintiffs lacked an effective state remedy because Defendants weaponized the court's backlog to force a statutorily barred hearing on a dead writ before the judge researched the docket (Doc. 1, Ex. 20 at Tr. 9:1-3).

Responding to Subpart III(D) (Doc. 7, p. 14), Defendants mischaracterize Count III (Civil Theft and Conversion) as suing for "theft by litigating" based on "the continued pendency of court process." No court process remained pending after the Writ automatically dissolved on November 25, 2025 under § 77.041(3). Plaintiffs do not sue over courtroom arguments; they sue because Defendants maintained an extra-judicial freeze or "dominion" for 76 days past automatic dissolution and unlawfully converted January 8, 2026 eBay earnings while within a safe-harbor window (Doc. 1, Ex. 4, 19). Neither *Levin* nor *Echevarria* immunizes post-dissolution conversion.

Responding to Subpart III(E) (Doc. 7, pp. 14–15), Defendants cite *LatAm Invs.*, 88 So. 3d at 240, 242–43, and *Am. Nat'l Title,* 748 So. 2d at 1055, to argue the privilege bars Count IV (Abuse of Process). Both cases predate *Debrincat* and involved live active lawsuits. By contrast, Florida courts hold that wrongful garnishments share the operational elements of malicious prosecution and are not barred by the privilege. *Burshan v. Nat'l Union Fire Ins. Co.*, 805 So. 2d 835, 844 (Fla. 4th DCA 2001). Hijacking scheduling machinery to examine Mrs. Zekas on a dissolved writ (Doc. 1, Ex. 15, 20) falls squarely outside the privilege. Section III of their Motion must be denied.

## VI. COUNTS II, III, AND IV INDEPENDENTLY STATE VALID CLAIMS

Under Section IV of their Motion, Defendants argue that Counts II, III, and IV fail to plead their respective legal elements (Doc. 7, p. 15). Plaintiffs rebut these claims

exposing where counsel attempts to flatten the record to obscure tortious intent.

### A. Count II Plausibly Alleges Actual Knowledge Under § 559.72(9)

Responding to Subpart IV(A) (Doc. 7, pp. 15–16), Defendants cite *Read*, 85 So. 3d at 1155, to argue that § 559.72(9) requires actual knowledge that a legal right does not exist and that "Bank of America" could not know its right did not exist until the state court adjudicated the TBE question. First, Bank of America is not a defendant in this suit; the Defendants are HHL, Mesa, and Ramos, whose independent statutory authority to enforce the writ terminated at midnight on November 25, 2025. Under *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 58 (Fla. 2001), joint marital bank accounts are presumptively immune TBE property *as a matter of law*. Garnishors bear the immediate burden of proof to enter specific sworn facts and evidence to overcome that robust asset-protection presumption. Because HHL failed to file a sworn “answer” contesting TBE ownership within 14 business days, "no hearing [was] required" and the writ dissolved automatically under Fla. Stat. § 77.041(3) (Doc. 1, Ex. 11). See also Section IV(C), supra. From that exact second forward, any right to maintain an administrative lock or execute judicial process over the immune assets ceased to exist, and the court's remaining duties were purely *ministerial*. The state court judge saying she needed to “research this” and “I haven’t had time to yet” was because she had been completely misled by the Defendants' deceptive scheduling practices and thus not yet made aware of her ministerial duty to sign an order to release the dead Writ.

Actual knowledge is conclusively established—backed by concrete exhibits, not conclusions—because HHL conceded the marital exemption by default, received cop-

ies of Plaintiffs' November 30 proposed Order and dissolution motion (on the pleadings), and their December 15 Safe Harbor notice (Doc. 1, Ex. 13, 14), yet maintained an extrajudicial hold for 76 days past dissolution. Worse, at the February 9, 2026 hearing, the record captures Ramos reading only the first isolated sentence of § 77.041(3) aloud to the court, while flatly admitting her total failure to read or comprehend the next two sentences of the text. Ramos openly confessed that she "does not know" the governing consumer protection statute commands that "no hearing is required" after a creditor's default (Doc. 1, Ex. 20 at Tr. 5:8-16 & 14:6-12). A debt collector cannot evade § 559.72(9) by claiming ignorance of a self-executing statutory dissolution triggered by its own default. Defendants' purported "ignorance" of their default was a product of reckless professional negligence. A debt collector cannot escape liability under § 559.72(9) by intentionally closing its eyes to the applicable second and third sentences of a statute, executing a context-stripped Notice of Extension, and relying on an administrative backlog to maintain a four-month illegal lock on immune property in order to schedule a statutorily barred hearing which ultimately even misled the court. The actual knowledge is forcefully and plausibly pled; dismissal must be denied.

**B. Count III Fully States a Claim for Civil Theft and Conversion as the Day 24 eBay Seizure Establishes Tortious Intent inside a Safe Harbor Window**

Responding to Subpart IV(B) (Doc. 7, p. 16), Defendants cite *Gasparini*, 972 So. 2d at 1055–56, to argue that Count III must be dismissed because the physical exhibits establish that the funds were always held in the neutral custody of Co-Garnishee meaning the Defendants never physically "obtained, possessed, or used" the cash

(Doc. 7, p. 16). Defendants' counsel further argues that the open filing of an objection and a notice on a public docket negates the element of "felonious intent" as an absolute matter of law, claiming their actions constituted "a good-faith claim of right" pursued in court; they never possessed Plaintiffs' funds and lacked felonious intent.

It is an axiomatic principle of Florida jurisprudence that a tortfeasor does not need to take physical possession of one's property. Conversion under §§ 772.11 and 812.014(1), does not require pocketing cash; exercising unauthorized dominion that deprives owners of their property permanently or for an indefinite time suffices.

Furthermore, bank ledgers stamp "Hayt Hayt and Landau Pl" directly onto the ongoing holds (Doc. 1, Ex. 4), and HHL's unilateral dismissal directive ordering Wells Fargo to release the funds (Doc. 1, Ex. 21) proves HHL *controlled* the freeze by exercising *unauthorized dominion*. Felonious and tortious intent is demonstrated because on January 8, 2026—Day 24 of the 30-day Civil Theft Safe Harbor window triggered by Plaintiffs' December 15 demand letter (Doc. 1, Ex. 14)—Defendants' administrative lock broke into the checking account to intercept a fresh eBay marketplace deposit arising from Mr. Zekas selling an item to support his household (Doc. 1, Ex. 19).

As established *supra*, Defendants were required to return the funds on November 26, 2025, after dissolution automatically occurred due to their default (Doc. 1, Ex. 11). Instead, Defendants intentionally exercised unauthorized dominion to sustain an asset lockout for nearly four months. Plaintiffs' formal Civil Theft Safe Harbor Demand Letter explicitly detailed the statutory definition of conversion, outlined their lack of legal authority, and provided a strict 30-day window to cure the deprivation.

Rather than utilizing this safe harbor to release the accounts, Defendants willfully ignored the notice, maintained total silence, and kept their administrative lock active. Capturing a fresh asset under a dead writ inside a safe harbor window completely refutes any claim of a "good-faith claim of right." See Section II, supra. Count III fully states a claim.

### C. Hijacking State Judicial Scheduling Machinery to Force an Evidentiary Ambush Constitutes Abuse of Process as a Valid Claim under Count IV

Responding to Subpart IV(C) (Doc. 7, p. 17), Defendants assert that Count IV must be dismissed and cite *S & I Invs.*, 36 So. 3d at 917, to argue a claim for abuse of process requires an improper use of process after issuance, and no perversion occurs when process accomplishes the exact result for which it was created. Counsel argues that the February 9, 2026 proceeding was held to accomplish precisely the single purpose for which § 77.041(3) created it: "to determine the validity of the claimed exemptions." This fractured reading of the garnishment framework is completely foreclosed by the record and the statute itself. While sentence one of § 77.041(3) authorizes a hearing upon a timely objection, sentences two and three mandate automatic dissolution if no legally sufficient sworn objection is filed. Because Defendants defaulted, the Writ automatically dissolved at midnight on November 25, 2025. See Section IV(C), supra. Following this dissolution, the statute commands that "no hearing is required" and the court's authority was strictly limited to a nondiscretionary, ministerial duty to sign an order of release. It is legally impossible to use court process for its "intended purpose" when the underlying legal execution vehicle has already ceased to exist.

The perversion of process occurred the minute Defendants realized they had defaulted, observed that the state court was operating under an administrative backlog, and chose to exploit that backlog to bypass the automatic protections of § 77.041(3). Plaintiffs did not request a hearing; the record establishes that Plaintiffs spent weeks trying to draw the court and the clerk's attention to fulfill their ministerial duty, by submitting a completed proposed order of dissolution on November 30, 2025 and filing a formal Notice to the Clerk (Doc. 1, Ex. 17) to secure an administrative release on the pleadings without a hearing (Doc. 1, Ex. 13).

The depth of this procedural perversion is conclusively established by the verbatim transcript records (Doc. 1, Ex. 20 @ Tr. 13:16-25 & 14:1-12). Once Mr. Zekas testified to the self-executing mechanics of automatic dissolution under § 77.041(3), Ramos went into an immediate state of panic, aggressively moving to strike the text "as irrelevant" because the truth conclusively established that her firm had been tracking a dead writ for over 70 days. The text flatly refutes the Defendants' unsworn narrative showing Mr. Zekas's statements were not stricken due to his status as a "non-party."

Defendants aggressively hijacked this summary process by misdirecting a JA onto an electronic thread to schedule a highly adversarial, statutorily unauthorized proceeding over a consumer's active written objections (Doc. 1, Ex. 15). The state court judge only directed the examination and allowed the line of inquiry because she had been completely misled by the Defendants' deceptive scheduling practices, admitting on the transcript that she had failed to read or research the active statutory filings on her own docket (Doc. 1, Ex. 20 at Tr. 9:1-3). Defendants' assertion that this pro-

ceeding constituted a regular use of process because "Plaintiffs requested it" is a continuous, bad-faith distortion of Exhibits 7, 9, 14, 15, 17, 18, and 20. See Section II, supra. Utilizing a dead writ and misdirecting a court's staff to force a consumer settlement is the quintessential definition of an abuse of process. Dismissal must be denied.

## VII. COUNT V PRESENTS A LIVE, JUSTICIABLE CONTROVERSY SUSTAINED BY UNCURED POCKETBOOK HARM

Responding to Section V of Defendants' Motion (Doc. 7, pp. 18–19), counsel cites *MedImmune*, 549 U.S. at 127, *Malowney*, 193 F.3d at 1347, and *Wilton*, 515 U.S. at 286–88, arguing Count V seeks an impermissible advisory opinion under Fed. R. Civ. P. 12(b)(1) because the writ was dismissed and principal funds were returned. This argument misapplies federal mootness doctrine. A defendant's voluntary cessation of challenged conduct does not deprive a federal court of jurisdiction unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Defendants cannot meet this heavy burden. Ramos dismissed the garnishment without prejudice only after compromising their position at the unauthorized February 9 hearing (Doc. 1, Ex. 20, 21). Because the underlying judgment remains active, Defendants retain unchecked authority to launch a fresh writ against Plaintiffs' accounts at any moment (Doc. 1, Ex. 1). For Defendants to claim that Plaintiffs' fear of future unlawful asset freezes is speculative is an exercise in bad faith. If these debt collection attorneys actively maintained an illegal asset lockout for nearly four months despite receiving explicit notices, Claims of Exemption, and pre-suit stat-

utory demands, there is zero objective basis to conclude they will not do it again.

Also, counsel's claim that Bank of America is an absent, indispensable party is an unsworn corporate screen. Plaintiffs possess zero verified proof that Bank of America holds standing over the judgment, whereas Defendants directly authored the freeze and stamped their firm name on the bank ledgers (Doc. 1, Ex. 4). Moreover, whether the accounts are immune TBE property is not a speculative future question; Plaintiffs have held these joint marital accounts for decades under *Beal Bank*, and federal declaratory jurisdiction under 28 U.S.C. § 2201(a) governs regardless of Fla. Stats. Chap. 86.

Most importantly, Plaintiffs have suffered an uncured out-of-pocket financial loss. While principal balances were returned on March 4, 2026, the $125.00 bank processing fee assessed under Fla. Stat. § 77.28 remains an un-reversed pocketbook injury (Doc. 1, Ex. 4, 22). By targeting presumptively immune TBE marital accounts from Day 1, Defendants caused a statutory fee to be forcefully drained from Mr. Zekas—a completely non-liable third party—and by maintaining an illegal 113-day freeze past automatic dissolution under Fla. Stat. § 77.041(3), Defendants actively prevented Plaintiffs from unlocking their accounts to dispute or mitigate that fee (Doc. 1, Ex. 3, 4, 12). Under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), a concrete pocketbook injury of even one dollar guarantees Article III standing through final judgment. Dismissal under Rule 12(b)(1) must be denied.

Finally, responding to Section VI (Doc. 7, p. 19), Defendants assert that the Court should decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and *Raney*, 370 F.3d at 1088–89, once Count I is dismissed. Because Plaintiffs have

forcefully and plausibly demonstrated that Count I states an actionable federal claim, this Court maintains mandatory supplemental jurisdiction over the logically intertwined state consumer law counts under 28 U.S.C. § 1367(a). Supplemental jurisdiction must be retained, and the Motion to Dismiss must be denied in its entirety.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court DENY Defendants' Motion to Dismiss Verified Complaint (Doc. 7) in its entirety and order Defendants to file their Answer within fourteen (14) days.

Dated: November 24, 2026

Respectfully submitted,

Lawrence G. Zekas, Co-Plaintiff, pro se
9736 Peabody Dr. N.
Jacksonville, Florida 32221
LZekas01@gmail.com

Susanna C. Zekas, Co-Plaintiff, pro se
9736 Peabody Dr. N.
Jacksonville, Florida 32221
LZekas@Live.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 24, 2026, a true and correct copy of the foregoing Amended Opposition Brief was served via U.S. Mail upon Defendants' counsel: Ernest H. Kohlmyer, III, Esq., Zimmerman, Kiser & Sutcliffe, P.A., 315 East Robinson Street, Suite 600, Orlando, Florida 32801.

Lawrence G. Zekas, Co-Plaintiff, pro se